IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RUDOLPH E. JARAMILLO,

       Plaintiff,

vs.                                    Civ. No. 00-1208 JP/DJS

LARRY G. MASSANARI, Acting
Commissioner of Social Security,[1]

       Defendant.

**MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION**[2]

    1.   Plaintiff invokes this Court's jurisdiction under 42
U.S.C. §405(g), seeking judicial review of a final decision of the
Commissioner of the Social Security Administration (Commissioner).
The Commissioner determined that Plaintiff is not eligible for
disability insurance benefits.  Plaintiff moves this Court for an
order reversing the Commissioner's final decision or remanding this

---

[1]   Pursuant to Fed.R.Civ.P. 25, Larry G. Massanari, Acting
Commissioner of Social Security is substituted for Kenneth S.
Apfel, as the Defendant in this action.  Mr. Massanari was
designated by President Bush on March 29, 2001.

[2]   Within ten (10) days after a party is served with a
copy of these proposed findings and recommendations, that party
may, pursuant to 28 U.S.C. Section 636(b)(1), file written
objections to such proposed findings and recommendations.  A
party must file any objections with the clerk of the district
court within the ten day period allowed if that party seeks
appellate review of the proposed findings and recommendations.
If no objections are filed, no appellate review will be allowed.

matter for a rehearing.  The Court will review the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner applied correct legal standards in making his findings.  <u>Williams v. Bowen</u>, 844 F.2d 748 (10th Cir. 1988).

**<u>Administrative History</u>**

2.   Plaintiff filed for Social Security Disability Insurance benefits on June 2, 1997, and applied for Supplemental Security Income (SSI) benefits on December 1, 1997. Tr. 72 and 296.  The applications were denied initially and on reconsideration.  Plaintiff requested and received a *de novo* review before an administrative law judge (ALJ).  The ALJ found that Plaintiff was not disabled.  Tr. 28.  The Appeals Council denied Plaintiff's request for review.  Tr. 7-8.  The decision of the ALJ therefore became the final decision of the Commissioner for judicial review purposes.

**<u>Statement of the Facts</u>**

3.   Plaintiff alleged in his applications that his disability commenced on May 27, 1997 and was due to an inability to concentrate, paranoia, nervousness, back injury with pain, hypertension, depression and diabetes.  Tr. 72, 85, 95 and 296. Plaintiff was born on March 12, 1950 and was 49 years old on the date of the ALJ's decision.  He has a twelfth grade education and a GED.  Tr. 112.  Plaintiff's past relevant work experience was as

a public service assistant, insurance agent and correction officer.

**Issues**

4.   Plaintiff alleges that the ALJ erred in: 1)finding that Plaintiff's mental impairment was not severe; 2) applying the grids conclusively; and 3)incorrectly weighing Plaintiff's credibility.

**The Standard of Review**

5.   The function of this Court on review is not to try the Plaintiff's claim *de novo*, but to determine upon the whole record whether the Commissioner's decision is supported by substantial evidence.  Hamilton v. Secretary of Health and Human Services, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is more than a scintilla but less than a preponderance of the evidence.  Richardson v. Perales, 402 U.S. 389, 401 (1971).  It is such relevant evidence as reasonable minds might accept as adequate to support a conclusion.  Id.  It is well settled that if there is substantial evidence to support the Commissioner's decision then that decision must be upheld.  However, the district court should not blindly affirm the Commissioner's decision but must instead scrutinize the entire record to determine if the Plaintiff's claim is supported by substantial evidence and the law has been correctly applied.  Hogan v. Schweiker, 532 F.Supp. 639, 642 (D.Colo. 1982).

6.   The Plaintiff must first make a *prima facie* showing of an impairment which effectively precludes him from returning to his past work.  Once that showing is made, the burden shifts to the

Commissioner to show:  (1) that the Plaintiff, considering his age, education, work experience and physical shortcomings, has the capacity to perform alternative jobs and (2) that these specific types of jobs exist in significant numbers in the economy.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); Salas v. Califano, 612 F.2d 480, 482-83 (10th Cir. 1979); Gardner v. Brian, 369 F.2d 443, 446-47 (10th Cir. 1966).

7.   To regularize the adjudicative process, the Social Security Administration promulgated regulations which establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. §404.1520.  At the first three levels of the sequential evaluation process, the claimant must show: (1) that he is not engaged in substantial gainful employment; (2) that he has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; and (3) that his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant cannot show that he has met or equaled a listing, he must show at step four that he is unable to perform work he had done in the past.  At the fifth step, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other substantial gainful activity considering his age, education, and prior work experience.  If a determination of disability is found at any step, further inquiry is not required.  20 C.F.R. §404.1520.

4

8.   Upon reaching the fifth step of the sequential evaluation process, the Medical-Vocational Guidelines (grids) are used in determining whether disability exists. 20 C.F.R. Part 404, Subpt. P, App. 2.   These grids reflect the existence of jobs in the national economy at various residual functional levels by incorporating administrative notice of some occupational publications and studies.  20 C.F.R. §404.1566(d).  This aids the Commissioner in determining what specific job types exist in the national economy for the claimant.  To apply the grids, the ALJ must make findings of fact as to age, education, work experience, and residual functional capacity.  20 C.F.R. §§404.1545, 404.1563-.1565.  These findings of fact are factored into the grids to produce a factual conclusion of disabled or not disabled.  20 C.F.R. §404.1569.  The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment.  20 C.F.R. Part 404, Subpt. P, App. 2, §200.00(e)(2).

9.   Where a claimant presents evidence of both exertional and nonexertional impairments (such as pain, inability to maintain concentration, and substance abuse), the grids are not conclusive but merely form a framework for disability determination.  Id.  In that situation, the ALJ must make findings on how much a claimant's work ability is further diminished by the nonexertional limitations.  Id.  If the claimant's nonexertional limitations are significant enough to reduce further his or her work capacity, the ALJ may not rely upon the grids but instead must give full

5

consideration to all relevant facts, including vocational expert testimony if necessary, in determining whether the claimant is disabled. Id.; Channel v. Heckler, 747 F.2d 577, 583 (10th Cir. 1984). However, the mere presence of nonexertional impairments does not automatically preclude reliance on the grids. Ray v. Bowen, 865 F.2d 222, 225 (10th Cir. 1989); Gossett v. Bowen, 862 F.2d 802, 807-08 (10th Cir. 1988); Channel, 747 F.2d at 582 n. 6.

**Discussion**

10.   In his decision the ALJ found that Plaintiff's alleged mental impairment was not severe. This determination was made at step two. Pursuant to the Secretary's severity regulations, 20 C.F.R. Sections 404.1520(c), 416.920(c)(1986), a step two decision is based on medical factors alone. It does not include consideration of vocational factors such as age, education or work experience. Pursuant to the severity regulations, the Plaintiff must make a threshold showing that his medically determinable impairment significantly limits his ability to do basic work activities, i.e., "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. Sections 404.1521(b), 416.921(b)(1986). Thus, at step two, Plaintiff has the burden of proof to show he suffered from a severe mental impairment. The substantial evidence shows that Plaintiff met his burden of proof.

11.   The relevant time frame for this decision is May 27, 1997, the date of the alleged onset through June 30, 1999, the date

of the ALJ's decision.  During this time, specifically, February 17, 1998 through February 23, 1998, the Plaintiff was hospitalized for "suicidal ideation."  Tr. 274.  He was diagnosed with "major depressive disorder."  Id.  He was discharged on two psychoactive medications, Amitriptyline and Paxil.

12.  At a clinic visit on March 12, 1998, the dosage of Paxil, an anti-depressant medication, was increased. Tr. 288.  In April of 1998, he reported suicidal ideation, homicidal ideation and paranoid delusions. Tr. 283.

13.  Plaintiff underwent a mental status exam with Dr. Gerald S. Fredman, an agency physician on March 13, 1998.  Dr. Fredman diagnosed the Plaintiff with "[d]epressive disorder."  Tr. 249.  In his evaluation, Dr. Fredman wrote:

> He was started on Paxil, an antidepressant, and it is too early to tell whether or not the medication is effective. Presently, he does exhibit depressive symptoms including diminished energy, motivation and libido.  There is also social withdrawal.
> The mental status revealed deficits in abstracting ability, fund of general information, attention and concentration. From a psychiatric perspective, the potential for sustained work activity would be fair.
>
> Id.

14.  Dr. Chiang, in completing the Psychiatric Review Technique Form (PRTF) found that Plaintiff suffered from depression.  Tr. 262.

15.  The record indicates that Plaintiffs Global Assessment of Functioning (GAF) was assessed on at least two occasions. GAF is a scale used to report "the clinician's judgment of the

7

individual's overall level of functioning." American Psychiatric Ass'n, <u>Diagnostic and Statistical Manual of Mental Disorders</u> 30 (4th ed. 1994). When he was discharged from his psychiatric hospitalization, Plaintiff's GAF was 50. This is defined as "serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." <u>Id</u>. at 32. Dr. Fredman assessed Plaintiff's GAF at 58 which indicates moderate symptoms and difficulty in social, occupation, or school functioning such as having conflicts with peers or co-workers. <u>Id</u>.

16.   All Plaintiff is required to show is a "minimal effect" on his ability to do basic work activities. <u>See</u> <u>Williams v. Bowen</u>, 844, F.2d 748, 750,51 (10th Cir. 1988). These records demonstrate that the Plaintiff has made the required "de minimus showing of medical severity." <u>Id</u>.

17.   As the remand will require the Commissioner to conduct the sequential evaluation, it is not necessary to address Plaintiff's remaining arguments. The Court notes, however, that a nonexamining physician's opinion is not substantial evidence. <u>Frey v. Bowen</u>, 816 F.2d 508, 515 (10th Cir. 1987). Further, Plaintiff's mental condition must be considered in making credibility findings. <u>Montgomery v. Shalala</u>, 30 F.3d 98,100 (8th Cir. 1994).

## Recommended Disposition

For these reasons, I recommend that Plaintiff's Motion to Remand be granted for proceedings consistent with these findings.

_____
**Don J. Svet**
**UNITED STATES MAGISTRATE JUDGE**